IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRACIE CHANDLER, | ) | CASE NO. 1:08 CV 2265 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Paula Tracie Chandler's application for Disability Insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§416(i), 423 and 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

**I. INTRODUCTION and PROCEDURAL HISTORY**

On November 5, 2003, Plaintiff filed an application for Disability Insurance benefits (tr. 14, 38), and on July 24, 2003 Plaintiff protectively filed an application for Supplemental Security Income (tr. 14). Plaintiff has alleged a disability onset date of July 14, 2002 due to back injuries, herniated discs, knee injuries and depression (Tr. 92). Born on February 28, 1966 (tr. 154, 172), Plaintiff was 40 years old at the time of the hearing and the ALJ's determination and a

1

"younger individual" for purposes of the Social Security regulations (Tr. 23, 282). *See* 20 C.F.R. §§404.1563. Plaintiff completed the eleventh grade and was in special education classes (Tr. 74, 200, 317). She has past relevant work as a food service worker (Tr. 22). At the time of the hearing, Plaintiff was working part-time as a ticket-taker, but this employment does not qualify as substantial gainful activity (Tr. 275, 296-97).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 37-46). Plaintiff requested a hearing (tr. 47) and, on October 26, 2006, appeared and testified before Administrative Law Judge Morley White (the "ALJ") (Tr. 283-339). The ALJ issued a written decision on December 11, 2006 in which he found at Step Four of the five-step sequential evaluation[1] that Plaintiff had the residual functional capacity ("RFC") to perform her

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

past relevant work as a food service worker and, therefore, was not disabled (Tr. 18-23). Specifically, the ALJ found that Plaintiff retained the capacity to perform a significant range of work with the following restrictions: only simple, routine tasks and low-stress work that does not involve arbitration, negotiation, confrontation or responsibility for the safety or welfare of others; no work involving math; must have simple instructions in basic English; work requiring only minimal interaction with co-workers and supervisors; and no work involving interaction with the public (Tr. 18). The ALJ further found that Plaintiff did not have any exertional limitations (Tr. 18). Plaintiff requested review of the ALJ's decision from the Appeals Council, which denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 6-10). On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits and Supplemental Security Income only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by

---

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. See *Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. See *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  ANALYSIS

**A.   Whether Substantial Evidence Supports the ALJ's Decision that Plaintiff Does Not Meet Listing 12.05C**

Plaintiff argues that the ALJ erred in his determination that Plaintiff does not meet the requirements of Listing 12.05C. Listing 12.05C establishes the framework for determining

whether a plaintiff is eligible for disability benefits where the plaintiff's claim is based, at least in part, on mental retardation. Listing 12.05C provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 . . .
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>  . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The regulations explain that a claimant meets the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria . . . ." *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001) (citations omitted) (emphasis in original). Thus, a claimant must make three showings in order to establish a disability due to "mental retardation" under Listing 12.05C. They are: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period;" (2) "[a] valid verbal, performance or full scale IQ of 60 through 70," and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Although the ALJ in this case accepted Plaintiff's IQ scores as valid, he found that Plaintiff did not meet Listing 12.05C because "she does not have another physical or mental impairment imposing any additional limitations on her" (Tr. 17). The ALJ explained:

5

> As discussed above, she does not have a physical impairment. Her learning disorder is not severe. While I gave her the benefit of the doubt in finding her depression and anxiety to be severe impairments, they do not result in any additional limitations on her residual functional capacity. She would have the same limitations based on her borderline intellectual functioning alone. Therefore, she has not established any additional and significant work-related limitation of function and does not meet listing 12.05C

(Tr. 17). The ALJ did not discuss whether Plaintiff met the diagnostic description in the introductory paragraph of the listing – i.e., whether Plaintiff has established "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."

Defendant does not specifically defend the ALJ's rationale that Plaintiff does not meet the requirements of the Listing because she does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. Rather, Defendant argues that substantial evidence supports the ALJ's decision because Plaintiff does not have the requisite deficits in adaptive functioning. The Court first addresses the ALJ's rationale.

Listing 12.05C provides regarding the third showing that a claimant must make:

> [i]f the additional impairment(s) does not cause limitations that are 'severe' as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function,' even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. 404.1520(c) and 416.920(c) explain that a "severe impairment" refers to an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." The "severe impairment" determination at step two of the sequential analysis has been characterized as a "*de minimis* hurdle." See *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("[A]n impairment can be considered not severe only if it is a

6

slight abnormality that minimally affects work ability regardless of age, education, and experience."); 20 C.F.R. § 404.1521(a). Although "in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation . . . . the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." Higgs, 880 F.2d at 862-63.

Plaintiff argues that the ALJ erred in finding that Plaintiff does not suffer from an additional and significant work-related limitation of function because the record reflects that she in fact has a number of additional severe impairments, both mental and physical. The Court first addresses Plaintiff's arguments with respect to her alleged physical impairments. According to Plaintiff, the ALJ "failed to evaluate [Plaintiff's] physical impairments according to law." (Doc. 14, at 23). Plaintiff argues that Dr. Huang's records show lumbar strains and chronic pain syndrome (tr. 171); that Dr. Ormby's records show degenerative joint disease (tr.254); that Dr. Sioson's records show chronic pain syndrome (tr. 167); and that Dr. Patel diagnosed Plaintiff with sprains of the wrist, neck and back.(tr. 185).

However, the medical expert reviewed these records and testified at the hearing that there was no objective evidence to support Plaintiff's allegations regarding her physical symptoms. The ME further testified that there was no objective evidence in Dr. Sioson's report to support his conclusions that Plaintiff's symptoms would impair her abilities to perform work-related tasks such as walking, climbing and standing (Tr. 316-17). The purpose of the medical expert is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the

claimant's testimony and the record. *See* 20 C.F.R. § 416.927(f)(2)(iii); *see also* HALLEX I-2-5-32. Medical expert testimony consistent with the evidence of record represents substantial evidence to support the Commissioner's decision. *See Barker v. Shalala,* 40 F.3d 789, 794-95 (6th Cir. 1994); *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 570 (6th Cir. 1989). Additionally, it is proper for the ALJ to rely on medical expert testimony in order to resolve conflicts between medical opinions. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987); *Schumer v. Comm'r of Soc. Sec.,* 109 Fed. Appx. 97, 101 (6th Cir. 2004). As the ALJ noted in his written decision:

> In looking first at the physical impairment, [the ME] felt that the medical evidence did not establish the presence of an impairment that would limit [Plaintiff] physically. [Plaintiff's counsel] pointed to a consultative examination by Eulogio Sioson, M.D.[] as evidence of chronic pain syndrome, but Sioson does not make or mention such a diagnosis (Ex. 11F). She also relies on a note from MetroHealth System in Cleveland, Ohio in which examining physician Shu Que Huang, M.D., noted [Plaintiff]'s persistent pain and wrote "she fits in better with chronic pain syndrome." However, Huang also noted he "did not find anything major to support any major pathology" (Ex. 5F). As Huang did not diagnose chronic pain syndrome and found no objective support for it, I find that chronic pain syndrome is not established. [Plaintiff's counsel] also points to progress notes from chiropractor Thomas Ornsby, D.C., that list severe lordotic curvature, degenerative joint disease of the cervical spine, cervical and thoracic spasm, and diminished reflexes as evidence of physical impairments (Ex. 14F pps.. 7-8). [The ME] pointed out that Doppler and lumbar spine x-rays from 2006 were negative, revealing no abnormality. My independent review of the record corroborates [the ME]'s testimony. Additionally, his opinion on this issue is more probative per the Regulations establishing that a chiropractor is not an acceptable medical source and thus cannot provide evidence establishing severe impairments (20 CFR 404.1513, 416.913). Therefore, [Plaintiff] does not have a medically determinable severe physical impairment

(Tr. 16-17).

Although there may be evidence in the record to support a conclusion that Plaintiff does suffer from a severe physical impairment, the record evidence, including that which the ALJ

relied upon, reflects that substantial evidence also supports the opposite conclusion. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) ("In deciding whether to affirm the Commissioner's decision, it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). Additionally, the ALJ was entitled to rely upon the ME's testimony in making that determination. *See Hale*, 816 F.2d at 1083; *Schumer*, 109 Fed. Appx. at 101. Therefore, the ALJ did not err with respect to his conclusion that Plaintiff does not have a severe physical impairment, or by extension, a physical impairment "imposing an additional and significant work-related limitation of function" within the meaning of Listing 12.05C.

The Court next addresses Plaintiff's arguments with respect to her mental impairments. Plaintiff argues that the ALJ erred in concluding that Plaintiff's additional severe mental impairments – i.e., her depression and anxiety disorder – would not result in any functional limitations other than those resulting from her borderline intellectual functioning. The ALJ does not point to any evidence in the record to support this conclusion, and no doctor in the record has stated affirmatively that the functional limitations resulting from each of Plaintiff's severe mental impairments are exactly the same. Defendant does not address this issue in his brief. Based on the above, the Court is hesitant to conclude that substantial evidence supports the ALJ's determination that Plaintiff's anxiety and depression do not result in any additional and significant work-related limitation of function. In so determining, the Court does not find

necessarily that Plaintiff's anxiety and depression *do* result in additional functional limitations, only that the ALJ's findings and analysis with respect to this point may be inadequate.

However, that does not end the Court's inquiry. In order to meet Listing 12.05C, Plaintiff must demonstrate that she satisfies all the elements of the Listing. *See e.g., Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Lawson v. Comm'r of Soc. Sec.*, 192 Fed. Appx. 521, 529 (6th Cir. 2006) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990), which stated that "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify"). Defendant argues that substantial evidence supports the ALJ's decision that Plaintiff does not meet Listing 12.05C because Plaintiff has not established the requisite deficits in adaptive functioning. In support of this argument, Defendant points to evidence that Plaintiff worked as a housekeeper, day-care provider, and hospital food service worker; that she has raised two children and "lived alone with her daughter;" that she is able to complete all activities of daily living; and that she is able to shop, listen to music, ride the bus, watch television, and read a novel every three days (Tr. 155,158, 203, 298).

Defendant concedes that the ALJ did not articulate the above rationale in his decision but argues that any error with respect to this point is harmless. Defendant cites *Shinseki v. Sanders*,129 S.Ct. 1696 (2009) for the proposition that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's decision." Defendant also notes Plaintiff's concession in her brief that she may not meet the requirements for mental retardation in the *Diagnostic Statistical Manual-IV* (DSM-IV). Plaintiff argues in her reply brief that whether or not she meets the requirements of the DSM-IV is irrelevant because the real question is whether or not she has the requisite deficits in adaptive functioning as defined by Listing

12.05. However, the Sixth Circuit has "recognized that Listing 12.05 tracks the *Diagnostic & Statistical Manual of Mental Disorders*, one of the leading texts in medicine." *Burrell v. Comm'r of Soc. Sec.*, 238 F.3d 419 (Table), 2000 WL 1827799 at *2 (6th Cir. Dec. 8, 2000) (citing *Brown v. Sec. of Health and Hum. Servs.*, 948 F.2d 268, 270 (6th Cir. 1991)).  Thus, whether or not Plaintiff meets the requirements of the DSM-IV *is* relevant to whether or not she meets Listing 12.05.  Additionally, as noted above, Plaintiff must meet the all of the requirements of the Listing, which include the *entire* diagnostic description in the introductory paragraph – not just the portion regarding deficits in adaptive functioning – and one of four independent sets of criteria.  See *Foster*, 279 F.3d at 353.  Accordingly, Plaintiff must present evidence that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22.

Significant to whether or not a claimant meets the diagnostic description in Listing 12.05C is whether there is a diagnosis of mental retardation.  Dr. Davis completed an evaluation of Plaintiff in March 2003, during which he administered the WAIS-III (Tr. 172-74). The results from this testing indicated that Plaintiff had a Verbal IQ of 65, a Performance IQ of 70 and a Full Scale IQ of 64 (Tr. 172).  Although these scores placed Plaintiff in the mild mental retardation range, Dr. Davis opined that Plaintiff "is capable of functioning at the lower end of the Borderline range but doesn't present with the ego strength to risk going out and making the best use of those abilities that she does possess" (Tr. 174).  Dr. Wax completed an evaluation of Plaintiff in May 2004, during which he administered the WAIS-III and WMS-III (Tr. 200-06). These tests revealed that Plaintiff had a Verbal IQ of 65, a Performance IQ of 68 and a Full Scale IQ of 65 (Tr. 203-04).  Dr. Wax found that these scores were valid, commensurate with prior

testing, and in the mentally retarded range, but he ultimately concluded that Plaintiff "appears to be functioning in the borderline range in her daily life. As such, she does not meet the criteria for mental retardation in the DSM-IV" (Tr. 204). State agency physicians McCreary and Umana also diagnosed borderline intellectual functioning (Tr. 209, 177). Dr. House stated that "[i]t is quite possible that a diagnosis of Borderline Intellectual Functioning should be advanced but no formal testing was ordered for this examination," and that "she is not specifically mentally retarded" (Tr. 159).

None of the above amounts to an unequivocal diagnosis of mental retardation; in fact, all of the medical opinions Plaintiff cites in support of her claim indicate that Plaintiff is capable of functioning in the borderline range. A diagnosis of borderline intellectual functioning is not consistent with a diagnosis of mental retardation. *See e.g.,* Cooper v. Comm'r of Soc. Sec., 217 Fed. Appx. 450, 452 (6th Cir. 2007) ("It is undisputed that no psychologist has diagnosed Cooper with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning."); West v. Comm'r of Soc. Sec., 240 Fed. Appx. 692, 698 (6 th Cir. 2007) ("Dr. Dunn's evaluation revealed only borderline intellectual functioning and adjustment disorder, not mental retardation."); Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 126 (6th Cir. 2003) ("The conclusions of Dr. Spence that Kamea was operating in the borderline range of intelligent functioning, rather than being mentally retarded, are supported by the testimony . . . although her intelligence test scores, standing alone, would indicate mental retardation.").

Furthermore, although Plaintiff complains in her reply that there was no analysis in the ALJ's decision regarding whether Plaintiff established the requisite deficits in adaptive

functioning occurring before age 22, analysis on this point is also noticeably absent from Plaintiff's briefing.  Plaintiff states at one point in her brief that although Dr. Davis concluded that Plaintiff appeared to be functioning in the borderline range, "the fact that her performance functioning may have been low-end borderline[] does not negate the fact that her I.Q. scores were in the range contemplated by the listing which addresses scores, not labels."  (Doc. 14, at 20).  But as explained above, Listing 12.05C addresses more than merely scores, or for that matter, labels.  In showing that she meets the requirements of Listing 12.05C, Plaintiff cannot merely rely upon omissions in the ALJ's written decision because it is her burden to establish that she satisfies all of the elements of the Listing.  See *Foster*, 279 F.3d at 353.  Based on the above, the Court concludes that Plaintiff has failed to demonstrate that she satisfies the diagnostic description in Listing 12.05C's introductory paragraph.  Since Plaintiff has failed to make this showing, Plaintiff has not met her burden, and the Court must uphold the conclusion of the ALJ with respect to this issue.

**B.     Whether the ALJ's Definition of the Word "Moderate" Constitutes Reversible Error**

Plaintiff argues that the ALJ's definition of the word "moderate" as meaning "average" or "within reasonable limits" constitutes reversible error.  As Plaintiff notes, many of the medical sources characterized several of Plaintiff's mental abilities as being "moderately impaired."  Plaintiff argues that the case law and POMS mandate that "moderate" means, roughly, "often," or occurring 50% of the time. Plaintiff cites a single case for this proposition: *Bankston v. Comm'r of Soc. Sec.*, 127 F.Supp.2d 820 (E.D. Mich. 2000).

The Court declines Plaintiff's invitation to go down this road.  Plaintiff seems to suggest that if a claimant has moderate limitations, the claimant should be found disabled.  *See* doc. 14,

at 25 ("[I]f moderate means what the regulations POMS [sic] and case law declare, then [Plaintiff] would not be able to perform any work in the national economy with moderate limitations in her ability to pay attention[] and concentrate or have competitive levels of persistence or pace."). Such a result clearly is not contemplated by the Regulations or the case law. Plaintiff appears to argue in the alternative that the case should be remanded so that Dr. House, who found that Plaintiff had several moderate mental limitations and upon whose opinion the ALJ placed great weight, could be afforded the opportunity to testify regarding his use of the word "moderate." However, the Court finds that remanding for this purpose would amount to "an idle and useless formality," since Dr. House opined that Plaintiff's limitations were moderate, and moderate limitations would not, as Plaintiff seems to suggest, establish disability as a matter of law. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969) which stated that courts are not required to "convert judicial review of agency action into a ping-pong game"); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 171, 173 (6th Cir. 2004) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) for the proposition that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand would lead to a different result").

C.      **Whether Substantial Evidence Supports the ALJ's RFC Determination**

Plaintiff argues that the ALJ's RFC determination is not based on the record as a whole and that it omits important functional limitations related to her depression and anxiety. Specifically, Plaintiff argues that the ALJ erred by omitting from the RFC determination limitations related to Plaintiff's need for close supervision and her inability to complete a normal

workday or workweek. Plaintiff also appears to argue that the ALJ's findings regarding Plaintiff's moderate difficulties in maintaining social functioning and concentration, persistence and pace do not comport with the ALJ's limitation for simple, routine, low-stress work.

The Court is not persuaded by Plaintiff's arguments regarding the ALJ's RFC determination. First, Plaintiff's assertions regarding her alleged need for close supervision and inability to complete a workday or workweek do not accurately reflect what is actually contained in the medical reports she cites. For instance, Dr. House did not state unequivocally that Plaintiff requires close supervision. Rather, Dr. House stated that Plaintiff "would not appear to require supervision in the management of her daily activities but would appear to require supervision in the handling of her financial affairs" (Tr. 160). This assessment seems to comport with the ALJ's provision in the RFC determination for no work involving math (Tr. 18). Additionally, Dr. McCreary did not opine that Plaintiff would be unable to complete a normal workday or workweek. Rather, Dr. McCreary opined that Plaintiff would be "moderately limited" in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and in her ability to perform at a consistent pace without an unreasonable number of rest periods (Tr. 215). This assessment is consistent with the ALJ's finding that Plaintiff is moderately impaired in her ability to maintain concentration, persistence and pace and the limitations in his RFC assessment for simple, routine, low-stress work with minimal interaction with co-workers and supervisors and no interaction with the public (Tr. 17-18). To the extent Plaintiff argues here that Plaintiff is unable to perform a normal workday or workweek because Dr. McCreary opined that she is "moderately" limited in that area, the Court reiterates that such an argument is meritless. *See* Part IV.B., *supra*. Furthermore, Plaintiff does

not adequately explain how the ALJ's assessments with respect to these limitations are inconsistent with the functional limitations included in the ALJ's RFC assessment. Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ, and the RFC determination must be upheld so long as it is supported by substantial evidence. Plaintiff has not met her burden to show why the ALJ's RFC determination is not supported by substantial evidence.

## V. DECISION

For the foregoing reasons, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: January 8, 2010.